Good morning, Your Honors. May it please the Court, my name is Russell Petty. I'm representing Mr. John Opeta. With me on this case is Ms. Lisa Cantor. And with the Court's permission, I'm going to strive mightily to maintain five minutes for rebuttal. In a nutshell, Your Honor, this case is about Mr. Opeta, who was an employee for Northwest Airlines. The claim was denied. The plan had an express arbitration provision which mandated that in the event of a dispute over permanent total disability, the matter would be submitted to a mutually. I have a difficulty with your premise. Maybe you could straighten it out. Your brief indicates this is an arbitration. Now, the nature of an arbitration is an arbitrator is selected. Both sides provide evidence. The arbitrator makes a decision. Here, that wasn't the case. Your client went to Dr. Gold. Dr. Gold made a decision. And all the trappings of arbitration assume that this is an arbitration case. But it doesn't look like an arbitration case. It doesn't smell like an arbitration case. It looks more like a person was designated to make a final opinion. But that isn't necessarily arbitration. How does the arbitration argument get into the case, other than by counsel setting it, stating it's arbitration? Well, you know, Your Honor, the reason why the arbitration argument gets into the case is because there was a contract in place that said that in the event of a dispute about this issue, that the parties would submit it to somebody who was a mutually agreeable arbitrator, and that that person would be the one who would make the decision. It didn't use the term arbitrator. It did not use the term arbitrator. Your contract says it will be submitted to a doctor, an independent doctor, for a final decision which would bind both parties. Arbitrator was never used. The word arbitrator was never used, Your Honor. There are numerous cases in this circuit and elsewhere that say that the language such as final and binding, which is the language that we have here, a final and binding determination, it means the final and binding determination. I found that in one case, it was a district court case by a very eminent district court judge. Where is a Ninth Circuit case that says when you just submit an issue to a decider, that that language means there's completely arbitration and all the trappings continue on of arbitration? You know, I'll cite the court, for example, to the McDonnell-Douglas case, which is, granted, a Second Circuit case, but the language is it is, in our estimation, irrelevant that the contract language in question does not employ the word arbitration as such. Rather, what is important is that the parties clearly intended to submit some disputes to their chosen instrument for the definitive statement of certain grievances under the agreement. What was the citation in that case? That's 858 Fed. 2nd. 825. The ---- Okay. Well, I don't know why that's too big. Why does it matter? I was going to ask the same question. Don't you get to the same place, regardless whether this is an arbitration or not, when the plain language of the contract says something? Isn't the other party in breach of it by not abiding by it? Your Honor, I actually really think upon reading the briefs that I agree with that completely. There's a binding agreement between the parties that the matter would be submitted to Dr. Gold and that his decision would be final with respect to this and that both parties would be bound by that agreement. And so, you know, with respect to the trappings of arbitration, granted, it doesn't look much like an arbitration case, but the fact of the matter is ---- So the agreement said, as Judge Wallace pointed out, it didn't say you'll go to arbitration. It just, the agreement actually said a doctor acceptable to you and the employer will make a determination. This determination will be final and binding on you and on the employer. So here we are, and that's what the language says. How does that now play into the additional evidence issue? Well, the first issue, of course, is the ---- as I see it, Your Honors, there are really three issues here. One of them is whether there was a waiver of the arbitration provision or of the contractual provision that this would be submitted to Dr. Gold by Mr. Rapetta's conduct at trial. The second issue is whether that language is ---- excuse me, the decision that Dr. Gold issued is clear and unambiguous or at least capable of being interpreted by the district court. And the third issue is whether, presuming that Dr. Gold's decision was so unclear that it was incapable of being interpreted, whether what the district court did in response to that was appropriate. And if the court has no questions with respect to that, I'll take those in order unless there's one issue or other that the ---- All right. I think you have to separate out, too, in your discussion which extrinsic evidence you're talking about. It may have been that Dr. Gold's testimony might have been necessary, but that the videotapes weren't or vice versa. I mean, in your argument, you tend to ---- the argument on waiver goes to everything. I mean, simply because you might have reluctantly gone along with Judge Ray's decision to bring Dr. Gold in to testify does not mean necessarily that there was a waiver of the any other extrinsic evidence that was not in the administrative record. That's exactly correct, Your Honor, and I think you're right. I think that the record is clear that the parties objected strenuously to both Dr. Gold and the videotape, but it's less clear with respect to Dr. Gold than it is, I mean, to the extent that's possible than it is with respect to the videotape, which ---- So let's take them one by one. Let's just first talk about Dr. Gold, and perhaps you can tell us what you think is reflected in the record on waiver as to having additional testimony from him and whether there's anything about that that's at odds with Ninth Circuit case law that permits this, you know, explanation of the doctor's testimony by himself. Well, first off, with respect to the waiver issue, I mean, I think there's at least five separate points in the record at which the Mr. Rapetta's counsel explicitly objected to the testimony of Dr. Gold. There was a trial brief. There was the Mr. Canner's statements at opening. There was written objections that were filed after the opening prior to any witness's testimony that objected to both Dr. Gold and the videotape. There was my statements at the trial opening that occurred before there was any testimony, and then after Dr. Gold testified and the videotape was shown, there was a motion to strike. The ---- Excuse me. In relationship to Dr. Gold, at one point there was a question of whether Dr. Gold should even come, and the plaintiff attorney said, it's fine. We'll bring him. Your Honor, I think that misconstrues Mr. Canner's statements. I mean, he said that, but in context, he was, you know, I mean, he started off by telling Judge Ray that he believed all Judge Ray should do is just simply enforce the agreement that Dr. Gold's position would be binding. Well, he started out by saying we don't need anyone with the possible exception of Dr. Gold. Then later on, he told the judge, if you want Dr. Gold, we can bring him in. How is that not a waiver of any objection to Dr. Gold testifying? Well, we'll ---- On some basis, not indicating what he should have said, but on some basis. Two points, Your Honor. Read in context, Mr. Canner's statements were just a response to the defendant's position, which is that we were trying to cover up some fraud and that if more evidence could be shown, and so you had to say that we're not concerned about this evidence and there's nothing in here that would hurt us. But more significantly, the fact is that after those statements were made, the plaintiff filed written objections to Dr. Gold's testimony in the videotape. I provided this Court this morning, and I'm sorry I didn't get it earlier, but I didn't discover it earlier, a letter with respect to supplemental authority. That's the General Signal Corporation case. And that stands for the proposition, it's a Ninth Circuit case, and it stands for the proposition that, you know, a party in that case explicitly agreed to a set trial procedure. Then later on, when the set trial procedure turned out to be not so favorable for it, it then set forward objections. And this Court held that the fact that you objected to something, even though you had explicitly agreed to it at some point, meant that there was no waiver and the matter was justifiable in this Court. Well, let me ask you this. If the doctor, if you didn't have the videotape and you just had the doctor come in, then I assume you'd consider his visit to the trial kind of harmless, correct? The, certainly, Your Honor, the, I mean, the, you know, there's what is good for our courts with the law, and those are not necessarily the same things. I think, and if you, you know, you read Dr. Gold's direct, certainly, all he did during his direct prior to seeing the videotape was affirm that Mr. Opetta was kind of disabled. So I'm just saying, if you could excise all the videotape, just very hypothetically, if you excised all of that, is there anything about his appearance at the trial that you're now saying was improper or at odds with his treating it as a binding? Yes, Your Honor, I do, because I believe that his statement, his written decision, was clear and unambiguous or, at the very least, could have certainly been enforced by the district court. It was certainly clear enough for that, and that being the case, I think that it was improper to bring in, you know, someone who was effectively an arbitrator in order to explain to the court what he meant. When there was a written decision that set forth, I think that's improper under arbitration law. I think it's improper under ERISA law. I know that doesn't, you know, you're kind of avoiding my bottom line question is, did it matter if you excised the videotape? Well, I mean, if you excise, videotape is what we really have a problem with. Okay, but do you hear my question? Yes. Try to listen to her question. Listen to the question. If you excise the videotape testimony and testimony related to the videotape from Dr. Gold's testimony at trial, is there anything there that, in your view, could be considered anything more than harmless to your client? There's nothing. As a matter of fact, it's entirely helpful to my client. Let's go to the videotape, because it all hinges on the videotape. That's correct, Your Honor. So we're kind of starting backwards. Now let's get to the bottom of this trial, okay? On the videotape, your argument is that that really doesn't relate to the doctor's opinion, correct? My argument is that the parties agreed to submit this to Dr. Gold. You know, the videotape could have been submitted at the time. It was not. Dr. Gold issued an opinion, and if you're going to maintain the presence, as the defendant is apparently doing, that what was really taking place before Judge Ray was just giving Dr. Gold an opportunity to clarify his opinion, which was ambiguous, it makes absolutely no sense to say, well, what we're going to do is show him additional evidence, because really what it is you're doing is you're taking a second bite at the apple. You agreed in writing that you were going to allow Dr. Gold to decide this matter. It was submitted. He decided it, and now we're having a hearing for the sole purpose by showing him additional evidence, which is not in the record and which was not shown to him before. We're going to show him this additional evidence in an effort to get him to change his mind. And that's what took place, and I submit that it's improper, and it's in violation of the plan documents and the contract agreed to between the parties that this matter would be submitted to Dr. Gold and that Dr. Gold would decide it. I think your argument makes a lot of sense, if you read the plan document, that I don't see this obviously arbitration, but I see it as a case to follow the contract, which has a decision maker. If that was the status. Now, I look at what Judge Ray did, and he made the decision as to whether or not your client is disabled. The question is, was he off base in making that decision? Now, I went back to the complaint, which was filed by the plaintiff in this case, and it doesn't say anything about enforcing a decision by Dr. Gold. The complaint is set up at paragraph 11. A controversy now exists between the parties as to whether the plaintiff continues to be disabled, as defined by the terms of the plan. Plaintiff seeks a declaration by this court that he meets the plan definition of disability and is entitled to continue long-term disability benefits from the defendant. Now, there was no pretrial order in this case, which would, by our rules, substitute for the initial pleadings. So, this case went to trial under the complaint. The complaint asked the district judge to make a determination as to whether your client is disabled. The district judge made the determination as to whether or not your client is disabled. Now, I wonder why we should reverse the district judge for doing... I understand your complaint. I'm just saying I'm not sure it's in the pleadings or the legal issues presented to the district judge. Well, Your Honor, the legal issues were clearly presented to the judge. I concede the court's point that they were not presented to the judge, the precise legal issues that I'm arguing here in the context of the complaint. But there cannot be any doubt by anybody who was present or who has reviewed the record that the parties repeatedly asked the judge to limit, excuse me, Mr. Opeta's counsel repeatedly asked the judge to limit his involvement to just enforcing the plan document, which is that Dr. Gold would decide this matter. And counsel, if the district court made a decision that it was based on evidence that never should have been admitted, then the decision would be, perhaps, reversible. And here, I thought you were arguing that under our law, in an ERISA case, the district court can only admit extrinsic evidence, such as videotapes, if they were necessary to the decision. I am arguing that, Your Honor. That's the Mongaloosa case. That's Mongaloosa and Kearney, Your Honors. And with respect to that one particular issue, you can read the defendant's opposition brief at length and they never actually respond to the issue of why is this information necessary. If the issue is what... This question may really go more to the Northwest Airlines counsel, but I guess what I'm wondering is up to the point where the videotapes were introduced, the evidence was, the sole evidence was, that your client was totally and permanently disabled. Yet, the judge made a different determination. And so, isn't it only logical to assume he made it on the basis of this extrinsic evidence? And if the extrinsic evidence should not have been introduced, because that was in error, then should we not reverse? I think that's exactly an appropriate analysis. That's the rest of this case that I think you might want to reserve some time. You're down below your five minutes, so why don't we hear from Northwest Airlines. Thanks very much, Your Honors. May it please the Court, Your Honor, Andrew Williams on behalf of the Northwest Airlines Pension Plan. There is, I think, something that needs to be cleared up in terms of counsel's presentation, which is the evidence and the record, the administrative record that came to the Court, was not clear evidence that Mr. Opeda was totally and permanently disabled. And that's the problem, as I read the record, that's the problem that Judge Ray had with this case. But the problem was that your plan, the contractual terms of your plan, said the decision would be made by Dr. Gold. Now, if you had thought it was appropriate for Dr. Gold to take into consideration the summary of the videotape or the videotapes themselves, shouldn't you have given them to Dr. Gold before he rendered his opinion so that he could make a decision on everything that you consider was in the record? Presumably, Your Honor, but for the fact that the Northwest Airlines Plan did not have the videotape until shortly before trial. And so, at that time, it wasn't there to give to Dr. Gold. It's a videotape, but you had knowledge of it and you had a summary of it right after September 2, 2004, and Dr. Gold's medical examination wasn't until November 2004, so there's no reason that you could not have provided that to Dr. Gold so that he could form the basis of his opinion. And had he seen that and been able to form an opinion incorporating that knowledge, he may not have issued the opinion that you later asked him to clarify, which you clarified to be that Mr. Opeda was totally and permanently disabled. You might have, if you had given him the evidence that you thought he should be making his decision on in a timely way, his determination that you were bound to may have very well been different. I don't disagree with you because, obviously, when he saw the videotape, he was shocked. But, now, that was something that you surprised him with. Now, why would you surprise your own independent and final decision maker with evidence at trial? I don't think it was a surprise, Your Honor. There was an agreement in the record that the videotape would not be shown to Dr. Gold before he testified and that's what the court found was appropriate. That was an agreement between you and the other insurer. If that was part of what you were compiling as your administrative record as the plan administrator to make a decision on, then it should have been provided to the final determiner before you had to go to trial to dispute this issue. Let me back up. You'll recall that when a plan comes to trial, the argument is we want an abusive discretion standard and we want the administrative record to be considered so that you would have sort of a motion for summary judgment type argument on it. And the reason for that was if you look at the totality of the reports issued by Dr. Gold, you can't just conclude as the Mr. Apeda's counsel concludes that Dr. Gold said yes, he's permanently and totally and permanently disabled. But that's not the standard of review in this case. And you, by your plain agreement with Mr. Gold, said that you would agree on a doctor who would be the final decision maker, not that you had discretion as the plan administrator to make the decision based on anything that he wanted to include. That's not the terms of the agreement. Right. And which is why it became a de novo review. Right. Okay. So now we go to a de novo review and admittedly these administrative insurance claims are a little odd at trial. True. You can see the court struggled with that in the Kearney decision. True. And I think counsel have to and district courts have like what are we supposed to do? But it did, no matter how confusing it might be, a couple principles emerge and two of which play in here. Certainly the plan documents are controlling and we have the document here that says the doctor is the final opinion in this matter. And second,   is not supposed to take additional evidence generally unless it's essentially absolutely necessary in order to clarify the fact that the doctor is the final opinion on the record below. And Dr. Gold submitted a letter which says that the person is temporarily totally disabled, he's unable to work in any capacity and then he goes on and he answers the insurance company's questions. Yes, he's totally disabled, he's permanently disabled and then at the end says there's a remote possibility maybe he could come back maybe remotely. So with that even if you thought that there might be some ambiguity with respect to Dr. Gold's opinion as to what he was looking at what is the legal basis for admitting the videotape in the face of this record? I think the legal basis is this. One, when Mr. Opeita argues for the NOVA review and that's accepted by the court and Mr. Opeita argues for extrinsic evidence to come in and that's accepted by the court including Dr. Gold, his client, that opens the door for the defendant to cross-examine those witnesses on their statements because this is in effect new evidence coming in. It's expanding on the grounds that there's a NOVA review and extrinsic evidence. Shouldn't the judge look at each piece of evidence separately and say is this piece of evidence necessary to the decision? By the way, there was one thing missing in Judge McEwen's chronology. You did in fact say this is ambiguous but we're going to ask the doctor to look at this separately and look at these videotapes which had    basis of Dr. Gold's opinion which undercuts your agreement with Judge McEwen and Judge McEwen and Judge  are saying that that would be the decision maker. Let me back up also. Recall the other issue that came up and that we presented to the court was if Judge this is a NOVA review if you think we don't have discretionary authority please remand it to the plan administrator so we can expand the record and let Dr. Gold see everything. That suggestion was opposed by Mr. Opeda. He said no don't remand bring in Dr. Gold and have him testify and explain what he means by what you think may be ambiguous. At that point now the judge decides we're not going to remand and we're going to bring in this person to discuss his reports. So we're in a position where we've opened this up and the questions are if you look at the case and consider whether it's necessary to an adequate review of the decision made. I think that misconstrues the notion of de novo review. De novo doesn't mean de novo review is a new piece of evidence that was not presented to the plan administrator. And here I can't think of a clearer case where you have a whole new piece of evidence that wasn't part of the administrative record. It just seems that this is exactly what Mangaluzo was warning against. Otherwise you basically are going to turn the   down. So I don't want to limit rather than expand these kinds of cases. Here you had the summary of the tapes. You had access to the tapes. You were the plan administrator and you clearly had agreed that someone else would make the decision and you deprived the decision maker of knowledge of those things. To me it seems as though Mangaluzo was the person who was entrusted to be the final decision maker and probably is what Mangaluzo wanted to discourage in the first place. I don't know I don't believe it was a trial tactic they didn't provide it I'm not sure it was disclosed to counsel for OPEDA that you had the tapes shortly before the date it was produced in June of 04 prior to mid July it was about roughly a month not put on until August of 04 at that time one thing I don't    disclosed to counsel for OPEDA it lays a foundation for OPEDA and Dr. Gold coming in and also Mr. Ackland counsel for the plan asked the court what can we show the videotape can we cross examine the videotape and the court said yes at the time there is no objection by counsel for OPEDA to this request and the court says it can come in the record is pasted with objections to the videotape subsequently I suppose because it was bad some before in the case but it didn't seem like I don't think you can argue a waiver on the videotape certainly two months later they realized this was not a good development that was a good development and they were not sure that  could get a waiver on the videotape and they were not sure that they not sure that they could get a waiver
judges: Wallace, McKeown, Wardlaw